IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 03 C 6107 |
| ) | |
| DAIMLERCHRYSLER CORPORATION, ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Allstate Insurance Company ("Plaintiff"), as subrogee of David & Theresa Wells, ("Mr. Wells" and "Mrs. Wells" respectively) brings suit against DaimlerChrysler Corporation ("Defendant") for negligence and product liability under Illinois law, arising out of a fire in the Wells' home that may have involved a vehicle made by Defendant. Defendant has moved for summary judgment as to both counts of the Complaint. The Court grants the motion in part and denies in part. Because the Court finds there exists a genuine issue of material fact as to the cause of the fire, the court denies summary judgment for Defendant. However, because the Court finds that Plaintiff has not presented facts sufficient as a matter of law to bring a claim of product liability on the basis of a specific defect, the Court narrows the issues to be presented for trial pursuant to Fed. R. Civ. P. 56(d) and grants summary judgment for Defendant on the theory of a specific defect in the product.

<u>Facts</u>

Mrs. Wells lived in a home at 2640 Boddington Lane in Naperville, Illinois. Defendant's Statement of Undisputed Facts, Docket No. 54, at ¶ 4 (hereafter "Def. 56.1 at ¶ __"). A 2000 Doge

Caravan (the "Vehicle") was parked in the garage of the home on October 3. *Id.* at ¶ 5-6. Mrs. Wells last drove the Vehicle at approximately 8:00 p.m. *Id.* at ¶ 5. Also in the garage were a gas lawnmower, a propane tank and grill, an electric garage door opener, a gas can, and spray cans. *Id.* at ¶ 8. At approximately 3:00 a.m., Mrs. Wells discovered a fire in the garage around 3:00 a.m., when the smell awakened her. *Id.* at ¶ 9.

The Naperville fire department arrived at the scene on the morning of October 4. *Id.* at ¶ 11. Lt. Gary Burke was the fire investigator for the fire. *Id.* The Vehicle was removed from the scene of the fire and transported to the Naperville Fire Department storage facility. *Id.* at ¶ 12.

Plaintiff retained two experts, Mr. Rayburn (assisted by Mr. Pendleton) and Mr. Kragh, to examine the Vehicle to determine the origin of the fire and the cause of the fire. *Id.* at ¶ 15, 18. Defendant retained Mr. Banta. *Id.* at ¶ 27. The parties agree that none of the experts inspected the Vehicle at the scene of the fire, because the fire department moved the Vehicle to its storage facility. *Id.* at ¶ 16. The parties agree that the fire originated in the garage. *Id.* at ¶ 10.

The parties dispute the cause of the fire and the specific origin of the fire. Mr. Pendleton concluded from his investigation that the fire was electrical in nature and originated in the Vehicle, but could not determine the exact cause. Pendleton Dep., Def. Ex. 4 at 43-44, 50, 62. Mr. Rayburn concluded that the fire originated in the engine compartment of the Vehicle. Rayburn Dep., Def. Ex. 7 at 52. Mr. Banta, on the other hand, concluded that the fire did not originate in the Vehicle, and that the Vehicle did not cause the fire. Banta Dep., Def. Ex. 8 at 52-56.

The parties also dispute any secondary causes of the fire. The parties dispute whether Mrs. Wells smoked a cigarette in the garage that evening, and whether or not she opened or closed the garage door. *Id*. at 6-7, Plaintiff's Response to Defendant's Statement of Facts, Docket No. 56, at

¶ 6-7 (hereafter "Plaintiff's 56.1 Response at ¶ __"), Plaintiff's Additional Facts, Docket No. 56, at ¶ 4-5 (hereafter "Plaintiff's 56.1 Additional at ¶ __").

## Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record, an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## Discussion

In order to prevail on a theory of strict liability, Plaintiff must show three elements: (i) the condition of a product caused the injury; (ii) that the condition was unreasonably dangerous; and (iii)

that the condition existed when the product left the manufacturer's control. *Doyle v. White Metal Rolling and Stamping Corp.*, 618 N.E.2d 909, 915 (Ill. App. Ct. 1993), *citing Suvada v. White Motor Co.*, 210 N.E.2d 182, 188 (Ill. 1965). A *prima facie* case for strict liability may be shown by evidence of either a specific defect or a non-specific defect. *Id.*

If proving a strict liability case through a non-specific defect theory, the plaintiff creates the inference of a defective product by showing that: (i) there was no abnormal use; (ii) there was no reasonable secondary cause of the injury; and (iii) the product "failed to perform in the manner reasonably to be expected in light of its nature and intended function." *See Bejda v. SGL Indus., Inc.*, 412 N.E.2d 464, 467 (Ill. 1980); *citing Tweedy v. Wright Ford Sales, Inc.*, 357 N.E.2d 449, 452 (Ill. 1976). A plaintiff may prove the inference of a non-specific defect through direct or circumstantial evidence. *Sikora v. AFD Indus., Inc.*, 319 F. Supp. 2d 872, 877 (N.D. Ill. 2004) *citing Tweedy*, 357 N.E.2d at 452.

*Specific Defect*

Defendant argues that Plaintiff cannot present evidence sufficient to proceed on a theory of strict liability through a specific defect. One of Plaintiff's experts, Mr. Pendleton, stated in his deposition that while in his opinion the fire began in the engine compartment of the Vehicle, and while he felt based on his investigation of the fire patterns that the fire was electrical in nature, he could not identify the exact wiring or component that failed. *See* Pendleton Dep., Def. Ex. 4 at 43-44, 50, 62. Likewise, Plaintiff's expert Mr. Rayburn could not identify the "arcing point" because any component that would have shown that point had been lost while the Vehicle was in transit. Rayburn Dep., Def. Ex.7 at 113-14. Mr. Banta, Defendant's expert, removed the front coolant module, examined all the electrical components in the engine compartment, and found no evidence

4

of an electrical malfunction in the engine compartment that caused the fire. Banta Dep., Def. Ex. 8 at 43-47. Plaintiff admits that Mr. Banta was the only expert to examine all the electrical components in the engine compartment. Def. 56.1 at ¶ 27.

Plaintiff has not provided testimony or a report from any expert that a specific defect in the Vehicle caused the fire in the garage. Plaintiff in this case presents expert testimony from two experts, Mr. Pendleton and Mr. Rayburn, both of whom testified that after examining the vehicle and determining the area of origin and probable general cause of the fire (electrical), neither expert could determine what component caused the fire. Because Plaintiff has not provided evidence that would allow a reasonable jury to find that a specific defect in the Vehicle existed, the Court grants summary judgment to Defendant on this portion of the strict liability claim.

*Non-specific Defect*

In support of its motion for summary judgment, Defendant argues that Plaintiff cannot meet its burden to show circumstantial evidence of a non-specific defect. Defendant argues that reasonable secondary causes existed that preclude Plaintiff from prevailing. Defendant relies primarily on the evidence from the report of the detective at the scene, and from the fire inspector, that Mrs. Wells may have smoked a cigarette in the garage on the evening of the fire, and that other potential sources of ignition existed in the garage, such as the garage door opener. *See* Bisch Dep., Def. Ex. 5 at 19-20, Burke Dep., Def. Ex. 3 at 29-30.

However, Mrs. Wells testified that she did not smoke a cigarette that evening, and testified that she could not remember whether she left the garage door open that evening. Mrs. Wells Dep., Pltf. Ex. 3 at 32, 37. As for other possible secondary causes of the fire, Lt. Burke testified that he knew about the garage door opening mechanism, the other gas-powered machines in the garage, and

5

the conditions of the storm in that area, and determined that on the basis of his observations of the fire scene that these other potential fire sources should be discounted. Burke Dep., Def. Ex. 3 at 32-24; *see, e.g., Roman v. General Motors Corp.*, 727 F. Supp. 1153, 1156 (N.D. Ill. 1989) (denying summary judgment on theory of non-specific defect due to testimony denying the presence of secondary causes).

Viewed in the light most favorable to the plaintiff, this testimony creates a genuine issue of fact as to whether secondary causes were present that would prevent Plaintiff from meeting her burden to show a *prima facie* case of a non-specific defect. To make a *prima facie* showing for a theory of liability on the basis of a non-specific defect, Plaintiff will need to show: (i) no abnormal use of the Vehicle; (ii) the absence of secondary causes for the injury; and (iii) that the product "failed to perform in the manner reasonably to be expected in light of its nature and intended function." Defendant concedes that there was no abnormal use of the Vehicle, Plaintiff has created a genuine issue of material fact as to possible secondary causes, and a van catching fire while sitting in a garage for several hours is not reasonable performance for the product. Therefore, the Court denies summary judgment for the Defendant on the theory of a non-specific product defect.

Conclusion

Because Plaintiff cannot present sufficient evidence to allow a reasonable jury to find that a specific defect existed in the Vehicle that caused the injury to Plaintiff, summary judgment for Defendant on a specific defect theory of liability is granted. Because Plaintiff has presented a genuine issue of material fact as to whether a non-specific defect existed in the absence of secondary causes, Defendant's motion for summary judgment on a non-specific defect theory of strict liability is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 26, 2006